**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PATSY B. KIDD,** | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) |
| | ) **CIVIL ACTION NO.: 1:24-cv-00225** |
| **METLIFE SERVICES AND SOLUTIONS, LLC; METROPOLITAN LIFE INSURANCE COMPANY; TIAA-CREF LIFE INSURANCE COMPANY,** | ) |
| | ) |
| *Defendants.* | ) |

**CLASS ACTION COMPLAINT**

Plaintiff Patsy B. Kidd brings this action on behalf of herself and all others similarly situated against MetLife Services and Solutions, LLC; Metropolitan Life Insurance Company; and TIAA-CREF Life Insurance Company. Plaintiff alleges the following on information and belief, except as to those allegations which pertain to the named Plaintiff:

**NATURE OF THE ACTION**

1. Patsy B. Kidd obtained coverage under a TIAA-CREF long-term care insurance policy beginning February 1, 2001. This policy was purchased as an employee benefit through her former employer.

2. For 260 months, she faithfully paid her $513.71 monthly premium—a total payment of $133,564.60. Then, when she finally needed the coverage for which she paid, Defendants MetLife, as the administrator of the policy, and TIAA-CREF, as the issuer of the policy, shorted her benefits by not counting approximately two months of care paid by Medicare toward her benefit waiting period.

3. Kidd brings this action to remedy the wrongful acts of the Defendants. Despite her ostensible coverage under a long-term care insurance policy, the Defendants wrongfully denied her insurance benefits. Kidd now sues on behalf of herself and a class of other insureds who, on information and belief, have been similarly denied benefits because the Defendants did not count days of care paid by Medicare toward the benefit waiting period required by their policies.

4. Kidd was injured and received care at Infirmary Health Therapy Services and The Colony Rehab in the Mobile, Alabama area. Kidd submitted a claim for benefits under the policy.

5. The policy should have paid for approximately two months of care in addition to the benefits she has received.

6. But the Defendants wrongfully denied Kidd those approximately two months of care based on either a misapplication of the policy language concerning the benefit waiting period of the policy or a bad-faith denial of benefits. On

information and belief, this type of denial has occurred in other instances with policyholders of the Defendants.

7. This action seeks damages for the Defendants' breach of contract, or restitution for the money they have wrongfully withheld from Kidd and others similarly situated, as well as damages for the misrepresentations made by the Defendants.

## THE PARTIES

8. Plaintiff Patsy B. Kidd is a natural person, is over the age of nineteen years of age, and is a resident of this district and division.

9. Defendant MetLife Services and Solutions, LLC is a Delaware limited liability company with its principal place of business at 1095 Avenue of the Americas, New York, NY 10036.

10. Defendant Metropolitan Life Insurance Company is a wholly owned subsidiary of MetLife, Inc., which is a Delaware corporation with its principal place of business at One Madison Avenue, New York, NY 10010.

11. Defendant TIAA-CREF Life Insurance Company a/k/a TIAA and TIAA Insurance Company ("TIAA") is a New York corporation with its principal place of business at 730 Third Avenue, New York, New York 10017.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action based on Federal questions pleaded by this Complaint. 28 U.S.C. § 1331.

13. Venue in this district and division is proper pursuant to 28 U.S.C. § 1391(b)(2) because Kidd resides in this district and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

14. As a benefit from her employer, Patsy B. Kidd purchased a long-term care insurance policy for herself and her husband, Robert. The Policy became effective in February 2001. Robert Kidd never received the benefits under the Policy during his life. Patsy Kidd sought benefits under the Policy for the first time in 2022.

### A. *Kidd suffers an injury that requires long-term care.*

15. On or about October 20, 2022, Kidd fell at her home, resulting in a fractured shoulder.

16. She was taken by ambulance to a local hospital where she was treated and released.

17. From October 24, 2022 through November 6, 2002, Kidd received in-home therapy.

18. She was re-admitted to a hospital on November 7, 2022 and stayed there until November 10, 2022.

19. After her discharge from the hospital, Kidd was admitted to The Colony Rehabilitation facility on November 11, 2022 and stayed at that in-patient rehab facility until November 21, 2022.

20. On November 21, 2022, Kidd underwent shoulder surgery to repair the fracture, and she was re-admitted to the hospital. She stayed there as an in-patient recovering from surgery until November 24, 2022. At that point, she was returned to The Colony Rehabilitation facility.

21. Kidd stayed as an in-patient at The Colony Rehabilitation facility from November 24-30, 2022. She was then discharged for outpatient treatment.

22. Beginning on December 3, 2022, Kidd received physical therapy services from a physical and occupational therapist. That therapy continued on an outpatient basis through the fall of 2023.

23. Medicare paid for the services she received from October 20, 2022 when she first went to the emergency room through her period of outpatient therapy in 2023.

    **B.**    ***Kidd was entitled to benefits from the Defendants.***

24. Kidd purchased her long-term care insurance in 2001 as an employee benefit through her employer. Each month thereafter—even following her retirement—Kidd paid $513.71 per month for this coverage.

25. The policy was written by TIAA-CREF and offers benefits based on the terms of the policy.

26. One defined term in the Policy is Benefit Waiting Period, which is the ostensible reason the Defendants wrongfully denied Kidd the benefits of her policy and, on information and belief, similarly denied benefits to other policyholders:

> **Benefit Waiting Period**
>
> The **Benefit Waiting Period** refers to the total number of days in which **You** continuously meet this Policy's eligibility criteria for benefits and **You** incur **Covered Expenses** for **Nursing Facility Care** or **Home and Community-Based Care** at least as often as twice every seven days.
>
> We will *NOT* pay for **Nursing Facility Care Benefits** or **Home and Community-Based Care Benefits** before the **Benefit Waiting Period** has been satisfied.
>
> Days of care paid by **Medicare** will count toward satisfying the **Benefit Waiting Period**.

Policy at 7 (all emphasis in original).[1]

27. The length of the Benefit Waiting Period was 90 days.

28. Medicare was defined as expected. Policy at 10.

29. Another term dictating the requirements of the policy is Benefit Eligibility:

> **Benefit Eligibility**
>
> **You** are eligible for benefits when all of the following conditions have been met:

---

[1] Under the Policy, "You" means Kidd and "Our" refers to TIAA-CREF Life Insurance Co. (As stated in the policy, MetLife is the administrator of the Policy.)

1. this Policy is in force;
2. a **Care Advisor** has assessed that **You** are a **Chronically Ill Individual**;
3. **You** have completed the **Benefit Waiting Period**;
4. **Your** expenses for care are **Covered Expenses**.

Policy at 13 (all emphases in original).

30. The term Covered Expenses was defined as follows:

**Covered Expenses** are charges incurred for **Qualified Long-Term Care Services** that are reimbursed subject to the **Benefit Eligibility Requirements** and other applicable terms of this **Policy**.

Policy at 8 (all emphases in original).

### C.    *The Defendants wrongfully denied Kidd the benefits to which she was entitled.*

31. In a letter dated January 27, 2023, the Defendants declared Kidd was eligible for benefits as of October 24, 2022. She has remained eligible for benefits continuously since that date.

32. In the same letter, MetLife said Kidd's "policy includes a waiting period of 90 calendar days, with a requirement of 2 service days per 7-day period."

33. Under the Policy, "[d]ays of care paid by **Medicare** will count toward satisfying the **Benefit Waiting Period**." Policy at 7 (emphasis in original). The Defendants did not comply with this provision. Specifically, the Defendants failed to include the days of care Kidd received from Infirmary Health and The Colony toward the benefit waiting period, even though those days of care were paid for by Medicare.

34. Defendants did not do so, even though they knew Kidd received care at Infirmary Health (a community-based care provider) and The Colony (a CARF), and that Medicare was paying both providers for her care.

35. During October, November, or December of 2022, Defendants did not inform Kidd that the days of care provided to Kidd by those two providers would not count toward the 90-day Benefit Waiting Period.

36. Kidd's family first learned the Defendants were not counting those days of service toward the Benefit Waiting Period on or about February 28, 2023.

37. Kidd's family contacted Defendants and asked them to reconsider, and noted that the plain language of the Policy stated that the days of care Medicare paid should count toward the Benefit Waiting Period.

38. On June 14, a representative of the Defendants emailed Kidd's family that, "After additional review, The Colony and Infirmary Health Rehab remain not approved."

39. Kidd's Benefits Waiting Period should have ended on January 21, 2023. Because the Defendants did not count the days of service paid by Medicare toward the Benefit Waiting Period, Kidd was forced to pay for at least two months' care out of pocket.

40. Kidd paid for home health services provided by SAADS Home Health from January 22, 2023 through March 31, 2023—services which should have been covered by the Policy.

41. There is no dispute regarding whether the services Kidd received were Covered Expenses or the providers offered Qualified Long-Term Care Services.

42. Nevertheless, Kidd wrongfully was forced to pay for services until April 1, 2023.

## CLASS ALLEGATIONS

43. Plaintiff brings this action on behalf of herself and a class of persons similarly situated in the State of Alabama. This action is maintainable as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3).

44. The Plaintiff proposes the following class definition:

> All persons in the State of Alabama who were denied their long-term care benefits by the Defendants based on their failure to count days paid by Medicare toward the Benefit Waiting Period. Excluded from the Class are employees, agents, officers, directors, and other individuals affiliated with the Defendants and their subsidiaries, parents, or related entities; and officers, employees, or Judges of this court and their family members.

45. The members of the proposed class (Class Members) can be determined from the records of Defendants or records readily available to them. Notice can be sent to Class Members by letter, email, the Internet, publication in newspapers or periodicals, or by other means authorized by this Court.

46.     This action is brought in part under Rule 23(a), and may be maintained under that rule because it satisfies the following criteria:

a.      **Numerosity:** The Class Members are so numerous that joinder of all of them is extremely impracticable. Plaintiff reasonably believes and alleges that the Class consists of thousands (and potentially tens of thousands) of persons.

b.      **Commonality:** Common questions of law and fact are shared among the Class Members. Such common questions include, but are not limited to, the following:

(1)     Whether Defendants contracted with the Class Members;

(2)     Whether Defendants denied benefits to the Class Members based on their miscalculation of the Benefit Waiting Period by failing to count days of service paid for by Medicare toward the Benefit Waiting Period;

(3)     Whether Defendants wrongfully retained benefits that should have been paid on behalf of the Class Members;

(4)     Whether Defendants represented to the Class Members that they would pay long-term care benefits on their behalf once the Benefit Waiting Period conditions were met;

(5)     Whether Defendants negligently, recklessly, or intentionally committed fraud or misrepresentation when describing the conditions under which the Class Members were entitled to benefits under their policies;

(6) Whether the MetLife Defendants did not act as prudent fiduciaries under ERISA's statutory requirements; and

(7) Whether Class Members are entitled to recover actual damages, compensatory damages; punitive damages, declaratory or injunctive relief, and/or attorneys' fees.

c. **Typicality:** Plaintiff's claims are typical of the claims of Class Members. Plaintiff and the other Class Members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and the other Class Members are based on the same theories.

d. **Adequacy:** Plaintiff, individually and through counsel, will fairly and adequately protect the interests of the Class Members. Plaintiff has no interest adverse to the Class Members' interests. Plaintiff has retained experienced counsel who will fully and adequately represent and protect the Class Members. Plaintiff's chosen counsel are ready, willing, and able to prosecute this case.

47. This case also is brought and maintainable under Rule 23(b)(3) because it satisfies the following essential criteria:

a. **Predominant questions of law or fact:** Questions of law or fact common to Class Members, including those identified above, predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class

treatment will allow a large number of similarly-situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.

b. Further, the monetary amounts due to many individual Class Members are likely to be relatively small, and the burden and expense of individual litigation would make it extremely difficult or impossible for individual Class Members to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the Defendants' unlawful practices effectively to pursue recovery of the sums owed to them, by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of this case in a class action vehicle.

### Count I: Unjust Enrichment
*Against All Defendants*

48. Plaintiff incorporates and realleges paragraphs 1-47.

49. Kidd had faithfully made her policy premium payments as described above, and she was entitled to payment of benefits for her long term care.

50. The Defendants knowingly retained Kidd's premium payments for their benefit.

51. The Defendants knowingly denied Kidd the full benefits to which she is entitled.

52. The Defendants' retention of these things of value under the circumstances is wrongful, inequitable, and constitutes unjust enrichment.

## Count II: Breach of Contract
### *Against All Defendants*

53. Plaintiff incorporates and realleges paragraphs 1-53.

54. As set forth above, Kidd entered into a contract under which the Defendants would pay benefits according to her long-term care insurance policy.

55. This was a valid, enforceable contract for which the Defendants received valuable consideration, including payments of insurance premiums by Kidd, as described above.

56. The Defendants have failed to pay the full long-term care insurance benefits for Kidd as required by the policy because they did not count the days of care paid by Medicare towards the Benefit Waiting Period, and they continue to retain things of value that are rightfully hers.

57. As a direct and proximate result of the conduct of the Defendants, Kidd has been harmed because she has been deprived of the full benefits for her long-term care to which she was entitled.

58. As a direct and proximate result of the conduct of the Defendants, Kidd has been harmed because the amounts of benefits she received were lower than required by the policy.

## Count III: Negligent Fraud and Misrepresentation
*Against All Defendants*

59. Plaintiff incorporates and realleges paragraphs 1-58.

60. The Defendants negligently made false representations concerning material facts about both the policy between Kidd and the Defendants and the benefits to which Kidd is eligible.

61. Kidd reasonably relied on those false representations to her detriment when she decided to enter into a long-term care insurance agreement with the Defendants.

62. Kidd reasonably relied on those false representations to her detriment when she fronted the costs of long-term care after the benefit waiting period.

63. Kidd did not discover, nor could she have discovered, that the Defendant's representations to her were false until after they denied her the benefits to which she was entitled.

64. As a proximate result of her reliance on these false representations, Kidd has been damaged, including emotional distress and financial loss.

## Count IV: Declaratory Judgment Act Claim
*Against All Defendants*

65. Plaintiff incorporates and realleges paragraphs 1-64.

66. Under Federal Rule of Civil Procedure 57 and the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, there is an actual and justiciable controversy

regarding the disability insurance contract issued by TIAA and administered by the MetLife Defendants.

67. Kidd and others similarly situated met all criteria to have their days of service covered, and the days paid for by Medicare should be counted toward their benefit waiting period.

68. Kidd, on behalf of herself and others similarly situated, requests that this Court make a declaratory judgment that the following provision should be read plainly and without qualification: "Days of care paid by **Medicare** will count toward satisfying the **Benefit Waiting Period**." Policy at 7 (emphasis in original).

### Count V: Violations of Employee Retirement Income Security Act
*Against Defendants MetLife Services and Solutions and Metropolitan Life Insurance Company*

69. Plaintiff incorporates and realleges paragraphs 1-68.

70. Under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461, MetLife owes a duty to Kidd and others to act as a prudent fiduciary.

71. Kidd is entitled to sue on behalf of herself and others similarly situated to recover benefits due under the terms of the plan, to enforce their rights under the terms of the plan, or to clarify their rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B).

72. ERISA imposes strict fiduciary duties upon the MetLife Defendants as fiduciaries of the plan, including the duty of prudence, the duty to adhere to

governing plan documents, the duty of loyalty, and the requirement to refrain from prohibited transactions. These duties apply to all fiduciary acts, including providing reimbursement for disability insurance benefits.

73. ERISA's duty of prudence requires fiduciaries to discharge their responsibilities "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

74. In addition, ERISA requires each fiduciary to act "in accordance with the documents and instruments governing the plan," except when those documents themselves violate ERISA. 29 U.S.C. § 1104(a)(1)(D).

75. The MetLife Defendants are fiduciaries within the meaning of ERISA, and are personally liable for the losses alleged in this complaint. 29 U.S.C. § 1109.

76. The MetLife Defendants did not abide by the Policy's plain language in their denial of benefits to Kidd and others similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for relief as follows:

77. An Order certifying this as a Class and appointing Plaintiff and her counsel to represent the Class, which is identified as follows:

> All persons in the State of Alabama who were denied their long-term care benefits by the Defendants based on their failure to count days paid

by Medicare toward the Benefit Waiting Period. Excluded from the Class are employees, agents, officers, directors, and other individuals affiliated with the Defendants and their subsidiaries, parents, or related entities; and officers, employees, or Judges of this court and their family members.

78. An Order awarding Plaintiff and the Class statutory damages, actual damages, and punitive damages as this Court deems proper;

79. An Order awarding Plaintiff and the Class restitution and/or disgorgement and such other equitable relief as the Court deems proper;

80. An Order enjoining Defendants from future violations;

81. An Order awarding Plaintiff and the Class pre-judgment interest and post-judgment interest;

82. An Order awarding Plaintiff attorneys' fees, expert witness fees, and other costs; and

83. An Order awarding such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by struck jury on all issues so triable.

**Dated: July 8, 2024**                           Respectfully submitted,

                                                     *s/ Robert E. Battle*
                                                     Robert E. Battle (ASB-7807-T67R)
                                                     Harlan F. Winn III (ASB-7322-N73H)
                                                     Adam P. Plant (ASB-6324-A64P)
                                                     Mallory Morgan Combest (ASB-7455-A57C)

                                                     ***Attorneys for Plaintiff Patsy B. Kidd and the Putative Class Members***

**OF COUNSEL:**
**BATTLE & WINN LLP**
2901 Second Avenue South, Suite 220
Birmingham, AL 35233
Tel:   (205) 397-8160
Fax:  (205) 397-8179
Email:      rbattle@battlewinn.com
                  hwinn@battlewinn.com
                  aplant@battlewinn.com
                  mmorgan@battlewinn.com

**<u>SUMMONS AND COMPLAINT TO BE SERVED VIA FEDEX:</u>**

MetLife Services and Solutions, LLC
c/o C T CORPORATION SYSTEM, Registered Agent
2 NORTH JACKSON STREET, SUITE 605
MONTGOMERY, AL 36104

Metropolitan Life Insurance Company
c/o C T CORPORATION SYSTEM, Registered Agent
2 NORTH JACKSON STREET, SUITE 605
MONTGOMERY, AL 36104

TIAA-CREF Life Insurance Company
c/o CORPORATION SERVICE COMPANY INC, Registered Agent
641 SOUTH LAWRENCE STREET
MONTGOMERY, AL 36104